UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

___

In re

JASON L. ZAHRINGER,

        Debtor.

Case No. 07-30217

Chapter 13

___

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO
CONFIRMATION OF AMENDED PLAN

___

This matter came before the court on the chapter 13 trustee's objection to confirmation of the debtor's amended plan. The debtor opposed the objection and the parties filed briefs explaining their respective positions. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bank. P. 7052.

ISSUE

Whether a student loan payment can be a valid deduction as an additional expense claim on Line 59 of Form 22C due to "special circumstances"?

BACKGROUND

The facts of the case are not disputed. The debtor filed his petition for relief and original chapter 13 plan on December 21, 2007, which is after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. On January 2, 2008, the debtor filed his schedules and Official Form 22C – Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. The debtor filed various amendments to his schedules, plan, and Form 22C, none of which impact the issue at hand.

According to the debtor's Statement of Current Monthly Income, his monthly income, $5,038.00, is above the median family income of his size in Wisconsin. He has scheduled approximately $81,681.00 in unsecured nonpriority claims, including two educational obligations opened in 1993, totaling $1,736.00.[1] He has scheduled two secured claims, one for his home valued at $138,000.00 and one for a vehicle valued at $13,000.00. While listed on his schedules as unsecured, the debtor has also listed a secured claim on Form 22C for an engagement ring. Also on Form 22C, the debtor claimed as a special circumstance on Line 59, a student loan payment of $400.00. The amended plan provided for payment of the student loans directly from the debtor, and said loans were expected to be paid in full during the first year of the plan.

The debtor's amended plan provided for semi-monthly payments to the trustee in the amount of $207.50 for the first five months of the plan. Plan payments were projected to increase to $723.00 per month ($361.50 semi-monthly) in month six of the plan, and increase again to $773.00 per month ($386.50 semi-monthly) in month 13 of the plan due to the disposable income increase upon payment in full of the student loans.

## ARGUMENTS

The trustee opposed confirmation of the plan on the grounds that the plan does not provide for all of the debtor's projected disposable income, and the deduction for student loan payments is improper in arriving at that amount. *See* 11 U.S.C. § 1325(b)(1)(B). While the Code does not define "special circumstances," it does provide two examples: a serious medical condition or active military service. 11 U.S.C. § 707(b)(2)(B)(I). Student loans, which are quite common among American consumers, are not of the same nature as a serious medical condition

---

[1] Proofs of claim filed for two educational loans total only $1,292.51.

or active military service.  If Congress intended for student loans to be deducted from the bottom line of the means test – such as deductions for payments on priority and secured claims – it could have done so.  Allowing debtors to deduct student loan payments from that bottom line results in double dipping, reducing the bottom line while allowing payments to come from that bottom line amount.  Student loans, like other unsecured obligations, should be paid out of the bottom line number on the means test without reduction.  Also, allowing student loans to be deducted from the means test as a special circumstance would unfairly discriminate against the remaining unsecured creditors.

The debtor argues that the deduction of the student loan payments are a special circumstance that qualifies for the deduction of the payment from the calculation of monthly disposable income under 11 U.S.C. § 1325(b)(2).  The deduction of said expense is valid given the fact that student loans are a non-dischargeable debt and will continue to accumulate interest during the term of the plan.  The debtor notes that unsecured creditors will not begin receiving a distribution under the plan until approximately month 29, and unsecured creditors will not be paid in full.  These factors indicate there is no reasonable alternative to allowing special circumstances.  *See* 11 U.S.C. § 707(b)(2)(B).  The debtor's plan proposes to increase payments to unsecured creditors once the student loans have been paid in full.  Unsecured creditors are receiving substantially more than that required by the means test, even without the student loan deduction.  Finally, the debtor argues all available disposable income and all projected disposable income are being paid to unsecured creditors.

DISCUSSION

Section 1325(b)(1) of the Bankruptcy Code requires that "the court may not approve the

plan unless ... the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). The BAPCPA significantly amended the method for determining a debtor's projected disposable income under section 1325(b). *See* 8 Collier on Bankruptcy ¶ 1325.08 [5][c][i] (15th Ed. Revised).

The amended section 1325(b) contains new definitions of the income and expenses to be used for determining a debtor's "disposable income." If, as in the present case, the debtor has "current monthly income" as set forth in Form 22C that, when annualized, is greater than the applicable median family income, section 1325(b)(3) requires the calculation of the debtor's monthly expenses in accordance with the chapter 7 "means test" of section 707(b)(2)(A) and (B). This will then be used to determine how much a chapter 13 debtor must commit to a plan for payment to unsecured creditors. Section 707(b)(2)(A)(ii)(I) permits a debtor to claim certain allowances for food, clothing and other items, known as the National Standards, and certain allowances for housing, utilities and transportation, known as the Local Standards, which are used by the Internal Revenue Service to help determine a taxpayer's ability to pay a delinquent tax liability. *See* Internal Revenue Manual § 5.15.1.7. If a presumption of abuse arises under subparagraph (A) of section 707(b)(2), then subparagraph (B) permits a debtor to rebut the presumption of abuse by demonstrating "special circumstances." 11 U.S.C. § 707(b)(2)(B)

Line 59 provides for "Other Expenses" with the following instructions:

List and describe any monthly expense, not otherwise stated in this form, that are required for the health and welfare of you and your family that you contend should be an additional deduction from your currently monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses.

Official Form 22C – Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

As noted in *In re Shahan*, 367 B.R. 732, 739 (Bankr. D. Kan. 2007), the statutory predicate for Line 59 is most likely section 707(b)(2)(A), where it states that the "the debtor's monthly expenses shall be the debtor's ... actual monthly expenses for the categories specified as Other Necessary Expenses" in the IRS Internal Revenue Manual. 11 U.S.C. § 707(b)(2)(A)(ii)(I). Form 22C's instructions allow these expenses to be deducted if they are "required for the health and welfare" of the family. That language parallels the criteria for their allowance contained in the Internal Revenue Manual.

The Internal Revenue Manual, Financial Analysis Handbook sets forth the categories of "other expenses." These other expenses are allowed "if they meet the necessary expense test – they must provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income." Internal Revenue Manual § 5.15.1.10. The categories listed in section 5.15.1.10 include: accounting and legal fees, charitable contributions, child care, court-ordered payments, dependent care, education, health care, involuntary deductions, life insurance, secured or legally perfected debts, and unsecured debts, taxes, telephone services, internet/E-mail, and repayment of loans made for payment of federal taxes.

Additionally, chapter 7 debtors may rebut the presumption of abuse "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [sic] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). This subsection is applicable in determining amounts reasonably necessary to

5

Case 07-30217-mdm    Doc 34    Filed 05/30/08    Page 5 of 10

be expended by the plain language of section 1325(b)(3). My colleague determined in *In re Crego*, __ B.R. __, 2008 WL 942618, 2008 Bankr. LEXIS 945 (Bankr. E.D. Wis. April 2, 2008), that cases analyzing special circumstances in chapter 7 means test cases apply equally in chapter 13 disposable income cases, and I concur for the same reasons.

Whether a special circumstance exists must be made on a case-by-case basis, particularly because of the fact-specific nature of each issue. *In re Turner,* 376 B.R. 370, 378 (Bankr. D. N.H. 2007); *In re Knight,* 370 B.R. 429, 437 (Bankr. N.D. Ga. 2007). The phrase "such as" in section 707(b)(2)(B)(I) is not limiting, and the two circumstances listed in the statute are not the only ones that would justify an adjustment. *In re Vaccariello,* 375 B.R. 809, 813 (Bankr. N.D. Ohio 2007). At the same time, several courts have determined that Congress intended "to set this bar extremely high, placing it effectively off limits for most debtors." *In re Haar,* 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007); *see also In re Martin,* 371 B.R. 347, 352 (Bankr. C.D. Ill. 2007) (stating that "special circumstances" must be construed as "uncommon, unusual, exceptional, distinct, peculiar, particular, additional or extra conditions or facts"). On the other hand, the *Crego* court noted:

> Beyond the special circumstances expressly described in the statute, i.e., a serious medical condition or active duty in the Armed Forces, "debtors with lost jobs, domestic relations problems, children in trouble, natural disasters, [and] car wrecks" may qualify. *See* Keith M. Lundin, Chapter 13 Bankruptcy, 3d Edition § 478.1 (2000 & Supp.2007). Judge Lundin points out that "special circumstances is not as harshly worded as barriers and exceptions elsewhere in the Bankruptcy Code," such as undue hardship under § 523(a)(8). *Id.*

*Crego*, 2008 WL 942618 at *1 (concluding that the debtors had demonstrated that marital separation was a special circumstance justifying additional expenses and the downward adjustment of disposable income).

6

Turning to the particular issue in dispute, several courts have held that nondischargeable student loans do constitute special circumstances. *See In re Haman,* 366 B.R. 307 (Bankr. D. Del. 2007) (holding chapter 7 debtor's obligation as co-signer on her son's student loans qualified as "special circumstance" sufficient to rebut presumption of abuse); *In re Martin,* 371 B.R. 347 (Bankr. C.D. Ill. 2007) (holding chapter 7 debtors' obligation to pay their nondischargeable student loan debt constituted a "special circumstance"); *In re Delbecq,* 368 B.R. 754 (Bankr. S.D. Ind. 2007) (holding student loan debt constituted "special circumstance" sufficient to rebut chapter 7 presumption of abuse); *In re Templeton,* 365 B.R. 213 (Bankr. W.D. Okla. 2007) (holding student loan qualified as "special circumstance" sufficient to rebut presumption of abuse in chapter 7 case); *In re Knight,* 370 B.R. 429 (Bankr. N.D. Ga. 2007) (holding debtor's long-term, nondischargeable student loan obligations could constitute "special circumstances" in calculating disposable income that he would have to devote to payment of unsecured creditors under chapter 13 plan). Those cases all essentially found that student loan obligations constitute special circumstances essentially because the debtors have acknowledged the nondischargeability of their student loan debt and have no reasonable alternative other than to pay the debt.

Other courts have concluded that student loans do not fall within the special circumstances provisions. *See In re Vaccariello,* 375 B.R. 809 (Bankr. N.D. Ohio 2007) (holding chapter 7 debtors' nondischargeable student loan debt was not "special circumstance" sufficient to rebut statutory presumption of abuse); *In re Lightsey,* 374 B.R. 377 (Bankr. D. Ga. 2007) (finding nondischargeable nature of student loan obligations did not warrant classifying them as "special circumstances" to rebut chapter 7 presumption of abuse); *In re Pageau*, 383

B.R. 221 (Bankr. D. N.H. 2008) (holding that presumption of abuse was not rebutted because chapter 7 debtor's monthly payments on student loans did not constitute "special circumstances"). These courts essentially found that the debtors' obligation to repay their student loans, standing alone, cannot constitute special circumstances.

The *Vaccariello* court disagreed with those courts which had reasoned that because the student loan debt was not dischargeable and must be paid, the debtors did not have any "reasonable alternative" to paying the student loans and, consequently, such debt constituted special circumstances. *Vaccariello*, 375 B.R. at 815. The court noted that if exception to discharge was all that was necessary to constitute special circumstances, debts including those related to fraud, willful and malicious injury, and death or personal injury resulting from operation of a vehicle while intoxicated would all constitute special circumstances that overcome the presumption of abuse. *Id*. The court further held that if nondischargeability were the standard for special circumstances, Congress would have said so. *Id.* Since "funding higher education through the use of student loans is becoming ubiquitous," the court concluded the debtors failed to rebut the presumption of abuse. *Id*. at 816.

The *Pageau* court agreed with the holding in *Vaccariello* and noted a distinction between loans taken out as part of retraining necessitated by a permanent injury, disability, plant closing or the like, and those taken out in the ordinary course of acquiring an education. *Pageau*, 383 B.R. at 228. Stating that "[p]ayments on student loans, business loans or equipment loans, incurred solely to secure a more advantageous income or to enter a different vocation, are not special circumstances," the court found that the student loans at issue were neither extraordinary nor rare. *Id*.

8

There is no indication the debtor in this case was part of any such retraining program. The evidence provided by the debtor regarding his special circumstances consists of a legal brief in opposition to the trustee's objection to confirmation. That brief, the debtor's schedules, and the proofs of claim filed by the student loan creditors, are sufficient to itemize and document the expense as required by section 707(b)(2)(B).[2] However, the evidence falls short of demonstrating that the expense is necessary and reasonable and that "there is no reasonable alternative." The loans were taken out by the debtor for higher education expenses in the early-1990s, making them very old, long-term obligations, not "special circumstances." Also, according to his schedules, the debtor has an annualized income of approximately $60,456.00, but has not addressed the possibility of budgetary cutbacks to help meet this small, nondischargeable debt. Line 59 of the means test form shows a deduction of $400 per month, but the debtor's brief states the two loans will be paid in five months and twelve months. The proofs of claim show that at this rate, both loans would be paid in full in about three months; thus, the debtor has failed to itemize properly or to explain adequately the necessity for the deduction.

Furthermore, direct payment, as opposed to payment through the plan, circumvents the provisions of section 1322(b)(10) of the Bankruptcy Code. This section provides that a plan can provide for interest payment on an unsecured debt only if the debtor has available disposable

---

[2] The Code requires, in order to establish special circumstances, the debtor must itemize each additional expense or adjustments to income, provide documentation for such expense or adjustment to income, provide a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable, and attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required. 11 U.S.C. § 707(b)(2)(B). Neither the statute nor the Federal Rules of Bankruptcy Procedure prescribe what form the itemization must take, but at the very least it should be set forth in a written response to either a motion to dismiss or an objection to confirmation.

income and all other claims will be paid in full. Here, the debtor argues that special treatment of this debt is necessary because of the accrual of interest.

As indicated, in order to qualify as special circumstances, the bar is set extremely high. Taking all the debtor's statements as true, the court cannot find the debtor has "no reasonable alternative" to the proposed student loan payment. There is very little left to be paid on these loans, and it would be absurd to allow the debtor to deduct $400 per month as a special circumstance under his means test. Thus, the debtor has failed to meet his burden of demonstrating special circumstances pursuant to the terms of 11 U. S .C. § 707(b)(2)(B). The debtor's projected disposable income shall be calculated without regard to student loan payments. A separate order consistent with this decision will be entered.

May 30, 2008

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court